# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRETTA VERRETT-BRILEY,<br><br>            Plaintiff,<br><br>     v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>            Defendant. | CASE NO. CV 17-2196 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

## I.
## INTRODUCTION

Gretta Verrett-Briley ("Plaintiff") seeks review of the final decision of the Acting Commissioner of Social Security (the "Commissioner" or "Agency") denying her application for social security benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 13, 14). For the reasons stated below, the decision of the Commissioner is REVERSED and this case

is REMANDED for further administrative proceedings consistent with this decision.

## II.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

|   |   |   |
|---|---|---|
| | (3) | Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four. |
| | (4) | Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five. |
| | (5) | Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled. |

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by reference to the Medical-

Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

### III.
### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process in evaluating Plaintiff's case. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 8, 2012, the alleged onset date. (AR 28). At step two, the ALJ found that Plaintiff's status-post left partial nephrectomy for grade 2 renal cell carcinoma without evidence of recurrence is a severe impairment. (AR 28). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 30-32).

The ALJ then assessed Plaintiff's RFC and concluded that she can perform light work,[1] except:

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category

4

> [Plaintiff] is restricted to performing all postural activities occasionally; would have mild inability understanding, remembering and carrying out detailed instructions, but would be able to make simplistic work-related decisions without supervision; mild inability interacting appropriately with supervisors, co-workers and peers; and can manage funds on her own behalf.

(AR 32). At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a paralegal, administrative clerk, and sales clerk. (AR 34). Accordingly, the ALJ found that Plaintiff was not under a disability as defined by the Social Security Act from August 8, 2012, through the date of the decision. (AR 35).

## IV.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial

---

when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must " 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.' " Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).e

**V.**

**DISCUSSION**

**A.    The New Evidence Should Have Been Made Part Of The Record**

Plaintiff submitted new and material evidence to the Appeals Council that postdated the ALJ's decision: (1) a November 24, 2015 Mental Medical Source Statement by Thomas Hoffman, M.D.; and (2) a

6

February 5, 2016 Operative Report for removal of Plaintiff's left kidney. (Dkt. No. 25, Exs. 1-2; see AR 5). The Appeals Council considered the evidence but nevertheless declined to review the ALJ's decision.[2] (AR 4-7). Thus, the new evidence became part of the record and must be considered by this Court in reviewing the ALJ's decision. Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."). In other words, this Court must "determine whether the ALJ's finding of nondisability was supported by substantial evidence in the entire record -- including any new evidence in the administrative record that the Appeals Council considered -- not just the evidence before the ALJ." Gardner v. Berryhill, 856 F.3d 652, 656 (9th Cir. 2017).

Here, the Appeals Council should have required the ALJ to consider the new evidence as part of the administrative record. While the new evidence postdates the ALJ's decision by a few months, it provides strong circumstantial evidence of Plaintiff's impairments during the relevant period. See, e.g., Forsythe v. Astrue, No. 10-CV-1515, 2012 WL 217751, at *7 (E.D. Cal. Jan. 24, 2012) ("Courts have found that circumstantial evidence can infer a deficit in adaptive functioning."); Christner v. Astrue, 498 F.3d

---

[2] While it is not clear that the Appeals Council considered the February 2016 operative report (AR 5), the Commissioner does not contend otherwise (Dkt. No. 28 at 1-2). Nevertheless, in determining that remand is required, this Court does not rely on the February 2016 report.

7

790, 793 (8th Cir. 2007) (finding "circumstantial evidence to support the fact that Christner's deficiency manifested before age twenty-two"); Gomez v. Astrue, 695 F. Supp. 2d 1049, 1061 (C.D. Cal. 2010) ("Evidence regarding [claimant's] educational history before age 22 permits the inference that his mental retardation had an onset date during the developmental period."). The Ninth Circuit has repeatedly recognized that retrospective diagnoses by treating physicians and medical experts are relevant to a determination of a disability. See Lester v. Chater, 81 F.3d 821, 831 n. 10 (9th Cir. 1995); Flaten v. Sec. of HHS, 44 F.3d 1453, 1465 n. 5 (9th Cir. 1995). On remand, the ALJ must evaluate all the medical evidence, including the November 2015 Mental Medical Source Statement and the February 2016 Operative Report.

**B.  The ALJ Failed To Properly Assess Plaintiff's Depression As A Severe Impairment At Step Two Of The Evaluation**

The ALJ found that Plaintiff's only severe impairment was her status-post left partial nephrectomy for grade 2 renal cell carcinoma. (AR 28). Further, the ALJ determined that Plaintiff's depression "do[es] not cause more than minimal work-related impairments, and [is] for this reason non-severe." (AR 29).

By its own terms, the evaluation at step two is a de minimis test intended to weed out the most minor of impairments. See Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987) (O'Connor, J., concurring); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001) ("We have defined the step-two inquiry as a de minimis screening device to

8

dispose of groundless claims."). An impairment is not severe only if the evidence establishes a slight abnormality that has only a minimal effect on an individual's ability to work. Smolen, 80 F.3d at 1290 (internal citation omitted).

As a threshold matter, Plaintiff's depression is well established by the record. As more fully discussed below, multiple physicians, including Plaintiff's treating physician, the medical expert ("ME"), the consultative examiner and the State Agency physicians, found that Plaintiff suffers from major depression. (AR 56, 80, 290, 387-88). Moreover, the medical record indicates that Plaintiff's depression has led to multiple long-term complications, including moderate restrictions in activities of daily living and moderate difficulties in maintaining concentration, persistence or pace. (AR 80). Thus, the ALJ's discussion of Plaintiff's condition does not fairly represent the significance of her depression and the limitations and complications arising from it, as reflected in the record.

Because a step-two evaluation is to dispose of "groundless claims," and the evidence here established that Plaintiff suffers from depression, the ALJ erred by not addressing this ailment. See Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005). The evidence in the record was sufficient for the ALJ to conclude that Plaintiff's depression is a severe impairment at step two under the de minimis test.

For the foregoing reasons, the matter is remanded for further proceedings. On remand, the ALJ must evaluate Plaintiff's depression as a severe impairment at step-two and include limitations imposed by Plaintiff's depression in the ALJ's overall evaluation of Plaintiff.

**C.    The ALJ's RFC Assessment Is Not Supported By Substantial Evidence**

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989) (citing 20 C.F.R. § 404.1545). An RFC assessment requires the ALJ to consider a claimant's impairments and any related symptoms that may "cause physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining a claimant's RFC, the ALJ considers all relevant evidence, including residual functional capacity assessments made by consultative examiners, State Agency physicians and medical experts. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); see also id. §§ 404.1513(c), 416.913(c).

In formulating Plaintiff's nonexertional limitations, the ALJ gave great weight to the consultative examiner's opinion and little weight to all other medical sources who evaluated Plaintiff's mental impairments. (AR 32-34). The ALJ's assessment is not supported by substantial evidence.

First, the ALJ improperly rejected the State Agency physician's opinion. On March 17, 2014, Charles F. Bridges, Ph.D., a State Agency physician, reviewed the medical record and opined that Plaintiff has a severe affective disorder (depression) that moderately restricts her activities of daily living and moderately limits her ability to maintain concentration, persistence or pace. (AR 80). Dr. Bridges also opined that Plaintiff is moderately limited in her ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities with a schedule, maintain regular attendance and be punctual within customary tolerance; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in the work setting. (AR 82-83).

The ALJ gave "little weight" to Dr. Bridges's opinion, finding it inconsistent with the consultative examiner's opinion and not having the benefit of the updated medical record. (AR 31). However, that one medical opinion differs from another opinion does not provide sufficient reasoning or substantial evidence for choosing one over the other. Further, the only medical record reviewed by the consultative examiner before giving her opinion

was related to Plaintiff's cancer surgery. (AR 288). In contrast, Dr. Bridges reviewed not only the consultative examiner's opinion but also other evidence submitted prior to March 2014, including Plaintiff's function report. (AR 76-77).

Second, the ALJ failed to give the proper weight to Plaintiff's treating therapists. Plaintiff began treating with the Airport Marina Counseling Service in September 2010. (AR 427-30). Plaintiff reported struggling with depression "for years," and which has recently worsened. (AR 427). She is a college graduate, who worked for over thirty years until July 2010. (AR 427-28). Plaintiff reported being raped when she was thirteen years old. (AR 428). Her depression symptoms included sadness, diminished interest in activities, insomnia, feelings of guilt, overeating,[3] and prior suicidal ideations. (AR 427). She acknowledged smoking marijuana on occasion. (AR 429). Michelle Mitchells, Plaintiff's therapist, diagnosed major depressive disorder, recurrent, moderate, and cannabis dependence and assigned a Global Assessment of Function ("GAF") score of 50.[4] (AR 429).

---

[3] The ALJ acknowledged that Plaintiff is morbidly obese. (AR 29).

[4] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998). The GAF includes a scale ranging from 0-100, and indicates a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) (hereinafter DSM–IV). According to the DSM–IV, a GAF score between 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning." Id. 34. "Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful

In June 2012, after attending more than sixty therapy sessions, Plaintiff continued to struggle with depression, weight gain, low self-esteem, lack of familial support and dysfunctional relationships. (AR 415). Kevin Kunkel, Plaintiff's therapist, diagnosed major depressive disorder, recurrent, in partial remission, and cannabis dependence, and assigned a GAF score of 59.[5] (AR 416). In January 2013, Plaintiff reported continuing dysfunctional relationships and low self-esteem. (AR 413). Her therapist, Ron Goode, diagnosed major depressive disorder, recurrent, in partial remission, and cannabis dependence, and assigned a GAF score of 59. (AR 413-14).

The ALJ gave the treating therapists reports only "partial weight." (AR 34). Even though their GAF assessments were consistent with the consulting examiner's assessment,[6] the ALJ concluded that "the record does not make clear whether these therapists qualify as acceptable medical sources." (AR 34). However, it appears that the treating therapists were under the supervision of treating psychiatrist Ronald Markham, M.D., who noted depressive symptoms and diagnosed dysthymia vs. depressive disorder NOS. (AR 426). The ALJ failed to even discuss Dr.

---

measurement." Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014).

[5] A GAF score of 51–60 indicates moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM–IV 34.

[6] The consultative examiner assigned Plaintiff a GAF score of 60. (AR 290).

13

Markham's treating notes. See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific, legitimate reasons, supported by substantial evidence in the record.).

Further, the ALJ's finding that the treating therapists are not "acceptable medical sources" is not a legitimate reason, by itself, for giving their opinions only partial weight. While the opinion of a therapist "cannot establish the existence of a medically determinable impairment," information from "therapists . . . may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Social Security Ruling (SSR) 06-3p, at *2.[7] SSR 06-03 further explains:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as [therapists], have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who

---

[7] Social Security Rulings (SSRs) "do not carry the 'force of law,' but they are binding on ALJs nonetheless." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009). They "reflect the official interpretation of the [Agency] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations." Id. (citation omitted).

14

|   |   |
|---|---|
| 1 | are not technically deemed "acceptable medical sources" |
| 2 | under our rules, are important and should be evaluated |
| 3 | on key issues such as impairment severity and functional |
| 4 | effects, along with the other relevant evidence in the |
| 5 | file. |
| 6 | |
| 7 | Id. at *3. Thus, while the treating therapists' opinions cannot |
| 8 | be given controlling weight, they cannot be discounted merely |
| 9 | because they are not acceptable medical sources. Garrison v. |
| 10 | Colvin, 759 F.3d 995, 1013-14 (9th Cir. 2014) (other sources "can |
| 11 | provide evidence about the severity of a claimant's impairment(s) |
| 12 | and how it affects the claimant's ability to work.") (citation and |
| 13 | alterations omitted). |
| 14 | |
| 15 | Finally, the treating therapists' evaluations were supported |
| 16 | by other medical evidence. In January 2015, Ingrid Liu, M.D., |
| 17 | Plaintiff's primary care doctor, noted Plaintiff's "persistent |
| 18 | depressed mood and crying episodes," "PTSD [from] sexual assault |
| 19 | as a child" and "chronic, uncontrolled" depression, with the |
| 20 | following symptoms: depressed, hopeless, anhedonia, insomnia, |
| 21 | overeating, trouble concentrating, and suicidal thoughts. (AR 387- |
| 22 | 88, 391). In November 2015, Dr. Hoffman completed a Mental Medical |
| 23 | Source Statement. (Dkt. No. 25, Ex. 1). Dr. Hoffman's clinical |
| 24 | findings included chronic, persistent depression, anxiety, |
| 25 | tearfulness, restricted range of affect, anhedonia, sadness, worry, |
| 26 | hyperarousal, irritability, insomnia, poor concentration, |
| 27 | flashbacks, fear, low motivation, lethargy and hopelessness. |
| 28 | (Id.). He diagnosed PTSD and recurrent major depression. (Id.). |

On remand, the ALJ shall properly assess the medical sources who evaluated Plaintiff's mental impairments and must provide specific and legitimate reasons for rejecting any portions of their opinions.[8]

## VI.

## CONCLUSION

Accordingly, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: January 9, 2018

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**

---

[8] Plaintiff also argues that the ALJ erred by (1) improperly rejecting David Lassus, M.D.'s opinion, (2) improperly rejecting her subjective symptoms, (3) failing to include all her limitations in the vocational expert's hypothetical, (4) incorrectly finding her capable of past relevant work, and (5) giving minimal impact to her morbid obesity. (Dkt. No. 26 at 17, 19-35). However, it is unnecessary to reach Plaintiff's arguments on these grounds, as the matter is remanded for the alternative reasons discussed at length in this Order.